UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROY GORDON

    Petitioner,

v.                                                    Case No. 8:05-cv-1683-T-23MAP

SECRETARY, Department of Corrections,

    Respondent.
_____/

## **O R D E R**

Gordon petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for fleeing and eluding, for which he was sentenced as a habitual felony offender to fifteen years' imprisonment. The response (Doc. 12) is supported by numerous exhibits ("Respondent's Exhibit ____"). The respondent concedes the timeliness of the petition. Gordon's petition presents seven grounds for relief. The respondent argues that grounds one through five lack merit and that grounds six and seven are procedurally barred.

A jury convicted Gordon of fleeing and eluding. The state appellate court affirmed Gordon's conviction and sentence in a per curiam decision without a written opinion. Gordon filed a state Rule 3.850 motion, which was denied following an evidentiary hearing and which denial was affirmed on appeal. Gordon's Section 2254 petition followed.

## **STANDARD OF REVIEW**

Because this action commenced after April 24, 1996, Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

> "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

Gordon's conviction and sentence were affirmed on direct appeal in a per curiam decision without a written opinion (Respondent's Exhibit 4), and the denial of his subsequent Rule 3.850 motion for post-conviction relief was likewise affirmed on appeal in another per curiam decision without a written opinion (Respondent's Exhibit 15). The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Gordon has the burden of overcoming a state court factual determination by clear and convincing evidence. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert.

- 3 -


denied, 534 U.S. 1046 (2001). Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Gordon's post-conviction claims of ineffective assistance of counsel (Respondent's Exhibit 11).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Gordon claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to Strickland, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims v. Singletary, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on

either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Gordon must demonstrate that counsel's error prejudiced the defense. Strickland v. Washington, 466 U.S. at 691-92. To meet this burden, Gordon must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Gordon cannot meet the burden of Strickland by showing that the avenue chosen by counsel proved ineffective:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

As stated above, Gordon must prove that the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Consequently, the state court's determination of each of Gordon's claims largely governs review of those same claims.

**Grounds One, Two and Three**

Gordon alleges his trial counsel rendered ineffective assistance by failing to further question three prospective jurors[1] during voir dire to assess their impartiality and

---

[1] Gordon delineates as three separate grounds for relief his claim of ineffective assistance based on defense counsel's questioning of jurors Bates, Morganelli, and Chernin. Accordingly, grounds one, two, and three are considered together.

- 6 -

by failing to strike these veniremen from the jury panel.  Gordon relies on the following excerpts of the voir dire transcript:

> (1) Prospective Juror Bates
>
> I've been married for 51 years.  We have three grown boys.  The oldest which was a police officer in a local town that we live in . . . .
>
> DEFENSE COUNSEL:  Anything about the fact that your son was a former police officer that you feel might infringe on your decision making here?
>
> JUROR BATES:  I don't believe so.  (T. 190)
>
> (2) Prospective Juror Morganelli
>
> DEFENSE COUNSEL:  Ever been the victim of a crime?
>
> MORGANELLI:  I have had my two houses broken into.
>
> DEFENSE COUNSEL:  Anything about that you think might effect you?
>
> MORGANELLI:  I don't think so because it was - we never did find out who did it. (T. 194)
>
> (3) Prospective Juror Chernin
>
> DEFENSE COUNSEL:  Mr. Stout says he needs fingerprints or something else. Okay how about as she was saying in her circumstances.  Suppose you knew the background of the nephew, that he was a convicted felon.  Would that be enough for you?
>
> JUROR CHERNIN:  I don't know.  (T. 201)

(Doc. 1 at 6).

Gordon raised the same three grounds in his state Rule 3.850 motion for post-conviction relief (Respondent's Exhibit 5 at 3-6).  Following an evidentiary hearing, the state court denied Gordon's claims as follows:

> In regard to issues 1-3 which involved the inquiry on the voir dire as to three different jurors and their possible prejudices.

- 7 -

>  1.  Regarding the Voir Dire and then listening to the testimony of the defense counsel when he explained that he was looking for particular types of jurors, and in his professional opinion thought that those chosen would be good jurors for his client.  The voir dire itself does not show any prejudices of these jurors that would affect their qualification and competence to be jurors that would be fair and impartial.  Further the record clearly reflects that the court specifically asked the defendant if it was an acceptable panel to him and he affirmatively indicated that it was.  Therefore, there is no basis for issues 1-3.

(Respondent's Exhibit 11 at 1).  To obtain relief on grounds one, two, and three, Gordon must establish that the state court unreasonably applied Strickland[2] or unreasonably determined the facts in denying Gordon's Rule 3.850 motion.

Effective assistance of counsel is required during voir dire.  Brown v. Jones, 255 F.3d 1273, 1278-9 (11th Cir. 2001).  However, counsel's questions and tactics during voir dire are a matter of trial strategy.  Hughes v. United States, 258 F.3d 453, 457 (6th Cir. 2001).  "A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be 'so ill chosen that it permeates the entire trial with obvious unfairness.'" Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).  Gordon presents no refutation of the state court's finding that voir dire revealed no prejudice to question these individuals' fairness and impartiality.  Gordon claims counsel had a responsibility to further question these three veniremen to assure that Gordon received a fair trial.  However, Gordon fails to suggest

---

[2] Although the state trial court failed to cite Strickland as the standard for ineffective assistance, no explicit citation is required.  A state court need not cite Supreme Court precedent (or even be aware of it) if the decision is consistent with the precedent.  Early v. Packer, 537 U.S. 3, 8 (2002); Parker v. Sec'y of Dep't of Corr., 331 F.3d 764, 775-76 (11th Cir. 2003).  In Florida, Strickland governs ineffective assistance of counsel claims.  Walls v. State, 926 So.2d 1156 (Fla. 2006).

- 8 -

what questions counsel should have asked and fails to demonstrate that counsel's questioning was inadequate.

Gordon's argument that counsel was ineffective for failing to strike the three veniremen is meritless. An ineffective assistance of counsel claim based on counsel's failure to strike an allegedly biased venireman requires a petitioner show a juror's actual bias. Miller v. Francis, 269 F.3d 609, 616 (6th Cir. 2001). Gordon neither shows actual bias nor shows that counsel's failure to strike these three veniremen prejudiced his defense, that is, Gordon fails to show that, if counsel had removed the three veniremen, the jury would have acquitted him. See Strickland, 466 U.S. at 694. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Gordon speculatively alleges that further questioning of Bates, Morganelli, and Chernin may have elicited ultimately some evidence of bias. However, Gordon fails to establish that the trial court's denial of these claims of ineffective assistance was either contrary to or an unreasonable application of Strickland or an unreasonable determination of the facts.

**Ground Four**

Gordon contends his trial counsel rendered ineffective assistance by failing to acquire a copy of a police radio transmission generated by the victim of the aggravated assault.[3] The state court denied this post-conviction claim as follows:

---

[3] Gordon was charged with aggravated assault on a law enforcement officer. The jury acquitted Gordon of this charge.

> Issue 4 was the failure to obtain a copy of a radio transmission of the law enforcement victim of an assault[. T]he defendant asked for a copy and didn't get one [,] but the evidence showed that no copy was given because no tape ever existed of this statement. The defense attorney had his investigator look into this matter and report to him that there was no such taped statement in existence so this is not a basis for ineffective assistance of counsel.

(Respondent's Exhibit 11 at 2).

Gordon presents no evidence of entitlement to relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). The record supports the state court's denying this claim. During the evidentiary hearing on Gordon's Rule 3.850 motion, trial counsel testified as follows:

> POST-CONVICTION COUNSEL: The next issue is failure to obtain a copy of a radio transmission which was apparently testified to by a particular officer who was the alleged victim of the aggravated assault. As I understand it, correct me if I'm in error, the officer was in the process allegedly of being run down by an automobile and at that point made a radio transmission indicating the events that were occurring; is that correct?
>
> TRIAL COUNSEL: That's correct.
>
> POST-CONVICTION COUNSEL: Okay. Did the defendant at any point in time request that you obtain a copy, a tape, a transcription, or any other evidence of that particular transmission?
>
> TRIAL COUNSEL: Yes, he did.
>
> POST-CONVICTION COUNSEL: And what was his request?
>
> TRIAL COUNSEL: His request was for me to get a copy of the radio transmission.
>
> POST-CONVICTION COUNSEL: Did you do so?
>
> TRIAL COUNSEL: Did I get a copy of the tape?
>
> POST-CONVICTION COUNSEL: Yes, sir.

TRIAL COUNSEL:  No.

POST-CONVICTION COUNSEL:  Why not?

TRIAL COUNSEL:  No tape existed.  After I spoke with Mr. Gordon I had contacted the State attorney, who was Jean Paul Galasso in this particular case, and requested a copy from him.  He had informed me at that time there was no tape.  I went into more detail.  No tape existed.  I then had one of my investigators from the Office of the Public Defender investigate the same situation and they found out that there was also no tape or transmission of that particular radio call.

POST-CONVICTION COUNSEL:  Did you investigate the procedures or processes that the law enforcement agency involved [. . .] utilized in retaining those type of documents?

TRIAL COUNSEL:  Did I personally do that?

POST-CONVICTION COUNSEL:  Did anyone?

TRIAL COUNSEL:  Yes.

POST-CONVICTION COUNSEL:  And what were your findings?

TRIAL COUNSEL:  When I was with the Office of the Public Defender, you submit an investigatory report to one of your investigators to the Public Defender's Office who works exclusively on your particular case.  You let them know what you want them to have done, what evidence you're looking for, whether it's photographs, radio transmissions.  They then contact all appropriate means.  My investigator keeps me informed of the status of that investigation on how it's going and they go through all proper procedures and look through manuals and when they came back and said no radio transmissions existed is when I informed that to Mr. Gordon.

POST-CONVICTION COUNSEL:  Your investigator indicated to you the particular procedures that this law enforcement agency used in maintaining their records concerning transmissions?

TRIAL COUNSEL:  They did not particularly inform me of what the particular procedures were to obtain the actual radio transmission, no.

POST-CONVICTION COUNSEL:  But you know as a matter of fact that your investigator went behind the simple statement that they didn't exist and determined how they would have existed or the procedure for maintaining them?

- 11 -

> TRIAL COUNSEL: Did they inform me of how they did it?
>
> POST-CONVICTION COUNSEL: Did your investigator do that investigation?
>
> TRIAL COUNSEL: Yes, my investigator did that investigation and no radio transmission was discovered.
>
> POST-CONVICTION COUNSEL: Do you have anything else you'd like to add concerning this particular investigation?
>
> TRIAL COUNSEL: On that particular ground, no.

(Respondent's Exhibit 10 at 335-38).

Gordon presents no evidence that the tape actually exists and fails to refute the trial court's finding. Gordon fails his burden of presenting clear and convincing evidence to overcome the presumption of correctness of the trial court's finding that no tape of the radio transmission exists. See 28 U.S.C. § 2254(e)(1). Gordon fails to establish that the trial court's denial of this claim was either contrary to or an unreasonable application of Strickland or resulted in a decision that is based on an unreasonable determination of the facts.[4]

**Ground Five**

Gordon alleges his attorney rendered ineffective assistance by presenting prejudicial hearsay testimony related to firearms and an informant during the opening statement. Following an evidentiary hearing, the state court denied this post-conviction claim as follows:

---

[4] Gordon also generally asserts that the trial court erred in denying this claim of ineffective assistance in his Rule 3.850 motion. Gordon fails to allege any federal constitutional basis for this claim. Consequently, the claim does not warrant federal habeas relief. Gordon also argues that the trial court's actions violated his rights under the Florida Constitution. This claim is not cognizable on federal habeas review. 28 U.S.C. § 2254(a).

- 12 -

> Issue five - The defendant complains that in opening statements the defense counsel commented on certain hearsay matters concerning the use of an informant that the State was no[t] able to get in otherwise. Therefore, this allowed prejudicial testimony to be admitted against the defendant. The defense attorney explained that the defense in this case was that the defendant was not the driver of the car in this matter and therefore, there was a strategic decision in letting this information in to show that it was a bad informant and further, that there were no firearms in the vehicles. Therefore, this matter was clearly dealt with in an acceptable professional manner and is not a basis for incompetent counsel.

(Respondent's Exhibit 11 at 2). The trial court's finding is supported by the record.

Defense counsel testified at the evidentiary hearing on Gordon's Rule 3.850 motion as follows:

> POST-CONVICTION COUNSEL: Okay. The fifth ground deals with an allegation that in your opening statement you made comments which were of a hearsay nature which the State would not have been able to get in evidence other than the fact that you had opened the door concerning the use of an informant and also concerning the fact that the initial call received by the police involved some allegations that firearms were involved and that such information being provided by counsel was detrimental and prejudicial to the defendant. Do you recall making the statements concerning the informant and do you recall making statements concerning firearms in the opening statement?
>
> TRIAL COUNSEL: I do.
>
> POST-CONVICTION COUNSEL: And would you explain to the Court why this type of information was provided to the jury when, in effect, the State could not have got [sic] it admitted otherwise?
>
> TRIAL COUNSEL: Our theory in our case was that Mr. Gordon was not the driver of the vehicle. Along with that, to demonstrate that the State was going to introduce or they were going to be bringing in evidence on why the police showed up, whether they did it through the specific informant's name--who, I believe was Sean at that particular time--that firearms were inside a vehicle. When the police ended up apprehending the vehicle, no firearms were located. It was my theory or strategy to show to the jury that nothing was going to be recovered inside of that

> vehicle, that it was an informant who was just indicating somebody has firearms.
>
> POST-CONVICTION COUNSEL:  Okay.  Even though the issue of firearms would never have been introduced other than your comments concerning it?
>
> TRIAL COUNSEL:  That's correct.
>
> POST-CONVICTION COUNSEL:  So, basically, you built up a straw man, so to speak, and knocked it down for the jury; would that be fair?
>
> TRIAL COUNSEL:  It was my theory that no firearms were located inside that vehicle at all, yes.  It was my strategy.
>
> POST-CONVICTION COUNSEL:  Any other comments you'd like to make on this particular issue?
>
> TRIAL COUNSEL:  Not on ground 5, no.

(Respondent's Exhibit 10 at 338-40).

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001).  "The inquiry into whether a lawyer has provided effective assistance is an objective one:  a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." Van Poyck v. Fla. Dept. of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002).  "[J]udicial scrutiny of counsel's performance must be highly deferential." Chandler v. United States, 218 F.3d at 1314 (quoting Strickland v. Washington, 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so

- 14 -

"patently unreasonable that no competent attorney would have chosen it." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983).

Trial counsel articulated to the state court the underlying reasons behind his tactical decisions. Gordon has not demonstrated that counsel's comments in his opening statement were anything other than trial strategy. Disagreements by a defendant with counsel's tactics or strategies will not support a claim of ineffective assistance of counsel. A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. Strickland v. Washington, 466 U.S. at 689; United States v. Perry, 908 F.2d 56,59 (6th Cir. 1990). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Even assuming that counsel's performance was deficient, Gordon fails to show that counsel's actions prejudiced Gordon such that the outcome of his trial would have been different. In the absence of an allegation of prejudice, a claim of ineffective assistance of counsel cannot succeed because the requirements of Strickland remain unsatisfied. Based on the bare allegations presented to support this claim and the evidence adduced at the state evidentiary hearing, the state court's rejection of this claim was a reasonable application of Strickland. Gordon is not entitled to federal habeas relief on this claim.

**Ground Six**

Gordon claims that he "was denied due process and equal protection of the law at [the] evidentiary [hearing] under credibility of trial counsel where state court appointed counsel to assist petitioner" (Doc. 1 at 19). Gordon apparently claims that post-conviction counsel failed to advise Gordon that trial counsel had been deposed and that the deposition contained "critical evidentiary material not brought out at the evidentiary hearing." Gordon contends that "[t]he state court based it's denial of [his] Rule 3.850 motion and claims under trial counsel's credibility." To the extent Gordon's claim is a challenge to the trial court's action at the evidentiary hearing, Gordon asserts no federal constitutional violation.

A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself. Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas claim that the state trial court violated a petitioner's due process rights because the court failed to conduct an evidentiary hearing and to attach to its opinion pertinent portions of the record resolved only issues unrelated to the cause of petitioner's detention and stated no basis for habeas relief). Beyond his scant allegations, Gordon fails to present factual support or legal authority to

substantiate either a due process claim or an equal protection claim.  Consequently, Gordon is not entitled to relief on this ground.[5]

**Ground Seven**

Gordon contends that, by waiving Gordon's right to testify without Gordon's permission, his trial counsel rendered ineffective assistance.  Gordon presented this claim to the trial court in his Rule 3.850 motion.  On appeal of the denial of his post-conviction motion, Gordon explicitly withdrew this claim (Respondent's Exhibit 13 at 15).  Consequently, this claim is unexhausted.  See Leonard v. Wainwright, 601 F.2d 807 (11th Cir. 1979).  Gordon seeks permission to present this claim, alleging that his waiver of the claim on appeal was a result of misadvice by appellate counsel.

To the extent Gordon's allegations assert that appellate counsel's error was the cause of his procedural default, Gordon's claim fails.  The Strickland standard of review applies to ineffective assistance of appellate counsel claims.  Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), cert. denied, 502 U.S. 1077 (1992).  While ineffective assistance of counsel may satisfy the cause exception to a procedural bar, the claim of ineffective assistance must have merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).  A claim of ineffective assistance of counsel may support a finding of cause only if counsel's performance was "so ineffective as to violate the Federal

---

[5] Even assuming that Gordon's claim, liberally construed, asserts a federal constitutional claim, the claim is unexhausted.  Section 2254 requires exhaustion of available state court remedies.  28 U.S.C. § 2254(b)(1)(A), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  Although Gordon appealed the denial of his Rule 3.850 motion, he did not pursue the claim he presents as ground six.  Gordon's decision to forebear his due process and equal protection claims on appeal results in a waiver and abandonment of these claims.

Constitution." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). If a petitioner cannot prevail on a separate ineffective assistance of counsel claim, he cannot prevail on an argument that ineffective assistance caused the procedural default. Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002). Gordon fails to allege he was prejudiced by appellate counsel's actions. Absent a showing of prejudice, Gordon cannot prevail on the claim of ineffective assistance of appellate counsel. Strickland v. Washington, 466 U.S. at 697. Consequently, Gordon cannot overcome his procedural default of this claim.

Accordingly, Gordon's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. Gordon's "motion to rule" (Doc. 19) is **DENIED** as moot. The clerk shall enter a judgment against Gordon and close this action.

ORDERED in Tampa, Florida, on August 14, 2007.

*[signature]*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE